No. 84.—Doe *ex dem.* Charlotte S. Daggett *et al.* plaintiffs in error, *vs.* Roe, cas. ejector, and Henry Durden and William Reed, tenants, defendants in error.

[1.] A grant to land cannot be presumed against the State after the lapse of forty years and upwards from possession alone, unaccompanied by any other proof or circumstance, and without it being made to appear whether the possession, at its commencement, was rightful or not.

Ejectment, in Twiggs Superior Court. Tried before Judge Powers, March Term, 1856.

This action was brought by plaintiff in error to recover lot of land No. 172, in the 28th district of originally Wilkinson, now Twiggs County.

On the trial below, plaintiff introduced a grant to the premises in dispute from the State of Georgia to Ezra Daggett, dated May 26th, 1851. Also, a deed from Charlotte Daggett (who was admitted to be the widow and sole heir of Ezra Daggett) to John M. Cook, one of the plaintiff's lessors. Plaintiff also introduced certificates disclosing the following facts: A certificate from the Secretary of the State dated April 15th, 1853, states that the records of his office do not show that the lot in dispute was granted to Young Clark's orphans or any other fortunate drawer; a certificate from the State Treasurer dated February 15th, 1855, shows that it does not appear from the records of his office that the grant fee for the premises in dispute was paid into the treasury during the year 1816, or at any other time until paid by Ezra Daggett on May 1st, 1851; a certificate from the Surveyor General dated February 6th, 1855, states that the lot in dispute was drawn by Young Clark's orphans, of the 9th district, Columbia County, and that the plat to said lot was never recorded to said orphans, but is recorded to Ezra Daggett. Here plaintiff closed.

Defendant relied upon the following agreement which they read to the Jury, to-wit:

"For the purposes of this trial, it is agreed that defendants were in possession of the premises in dispute at the time of the commencement of this suit, and that they have been in possession of said premises forty or fifty years; that defendant, Henry Durden, was born and raised on the place; that he has ditched and improved the place in the last four years, and the ditching and improvement was worth more than the rent; and that Charlotte Daggett is the sole heir at law of Ezra Daggett."

The Court charged the Jury as follows:

"The Statute of Limitations does not run against the State, and it appearing in evidence that the grant before you was issued on the 26th day of May, 1851, the Court charges you that plaintiff's cause of action did not accrue until the grant issued, and seven years not having elapsed before this suit was brought, plaintiff's right of action is not barred by the Statute of Limitations. But if you believe from the statements in writing signed by Counsel and read to you as evidence, that defendants have been in peaceable possession for 40 to 50 years, holding and using the same as their own without objection from any one, you may presume a grant from the State of Georgia to defendants, or their ancestors, or to some one under whom they claim or hold possession of an anterior date to that now produced to you in evidence by plaintiff. And if you should so presume, you will find for defendants; otherwise, you will find for plaintiff."

A verdict having been rendered for defendants, Counsel for plaintiff excepted to the charge of the Court and claims that it is erroneous.

Stubbs & Hill; Tracey, for plaintiff in error.

Saml. Hall, for defendants in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

This case comes up on an agreed state of facts; and the

Doe *ex dem*. Daggett *et al. vs.* Roe, &c.

single question for the decision of this Court is, whether a *grant* may be presumed to land after the lapse of forty years and upwards, from possession alone, unaccompanied by any other proof or circumstance, and without its being made to appear whether the possession at the commencement was rightful or not.

The general understanding amongst our people and profession in this State has been, that not only did not the Statute of Limitations proper run against the State, but that no length of possession would suffice to ripen into a title against the State, and thus induce the Courts to presume a grant to protect that title. Hence, the State has been indifferent whether squatters occupied the public domain or not. She was willing to this temporary or usufruct enjoyment, knowing that the lands were hers, and that she could dispose of them whenever and however she might see proper.

But it is now insisted and so decided, for the first time in our Courts, that this squatter occupancy may, if not interrupted after the lapse of time, divest the State of her fee to the territory.

We should require a proposition like this to be thoroughly fortified by authority, before we could get our consent to adopt and indorse it.

Adjudications have been adduced, both from the English and American Courts, to sustain this doctrine. The only conclusion to be deduced from the English cases is, that grants have been presumed against the Crown within the time of memory, that is, where the possession originated since the days of *Richard*. But in the few cases in that country where the Crown has been concerned, the duration of the enjoyment extended to several hundred years. And there were, besides, other circumstances that constituted a material element in the decision; considering, therefore, the English Law as ours by adoption upon this subject, the precedents fall short of establishing the principle contended for.

The two strongest cases cited by Counsel for the defendant in error, and the two strongest, perhaps, to be found in the

American Books, is that of *McClure vs. Hill,* (2 *Hill's Const. Reports,*) decided at Columbia, May, 1818; and *Rogers vs. Maybe,* (4 *Dev. Law Rep.* 180.)

In the South Carolina case, the defendant claimed under two grants: one to Andrew Turner, dated July, 1785, and a grant to himself, dated in 1793. The land in dispute was situated between the two, and as it turned out, covered by neither. All the buildings of the defendant, including the dwelling house, were on the disputed land. And the defendant had lived upon it upwards of twenty-five years. The Court justified the Jury in presuming a grant to protect the defendants' title. But did this judgment rest upon possession alone? Not so.

It appears from the testimony in the case, that there were other circumstances in aid of the possession. That adjacent to the land in controversy, there was land which had been cultivated long before the grant to Turner, and which was called Buddin's old field, at the time of the survey of the land granted to Turner. And the witnesses proved the existence of an old line, (the same which had been supposed to be the southern line of Turner's grant,) which was probably the line of some other and older grant, of which Buddin's old field was a part, and the land in litigation another part. And Judge CHEVES, in delivering the opinion of the Court, remarked that "this was very satisfactory evidence to support the long possession of the defendant."

In the case before us, there is not a scintilla of proof to sustain the possession.

To one of the enunciations made by this very learned and able Judge, we cannot subscribe, namely: that he knew of no reason except the principle of *nullum tempus,* which distinguishes a case between individuals and a case between a citizen and the State. We maintain that policy forbids that the same degree of vigilance should be expected or exacted of the public that is required at the hands of an individual on the assertion of a right. The only corrective or redress which the constituency have over their agents is the ballot

box. And the property of the people should not be lost by the negligence of the government.

This great Judge, for such he undoubtedly was, further observed, "That this rule of presumption is a safe one, as it is applied only where the possession is rightful to invest the possession with a legal title." But how can that possession be rightful against the State which is naked and without color or claim of right? And how can such rightfulness of possession be presumed, however ancient and long continued? Does not the squatter hold all the time in subordination to the title of the State, the true owner? And can that relation be changed without some unequivocal act on the part of the tenant, hardly conceivable as against the State?

In the North Carolina case, the corroborating circumstances were much stronger than in the one from South Carolina.

Maybe made an entry of the land in 1778, to which Alexander Martin, from whom the adverse title is derived, put in a *caveat* which he withdrew in 1779. From this and other circumstances connected with the great length of possession, the Court thought the Jury might presume a grant, but still left it as purely a question of fact for them.

Now there may be facts in the case before us, such as the calling for this lot as an adjoining boundary, or as belonging to the orphans of Young Clarke who drew it, which, if established satisfactorily and coupled with the long possession, might, in the opinion of a Jury, entitle them to presume that the land had been granted. But no such proof was submitted on the trial below; or if it was, it is not embodied in the agreement.